IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                  Cr. No. 08-2830 JCH

THEODORE LARGO

        Defendant.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's *Motion in Limine to Exclude John Doe's Testimony,* filed November 19, 2009 [Doc.55], the United States' *Motion for Two-Way Closed Circuit Television Testimony,* filed February 23, 2010 [Doc. 103], and the United States' *Motion in Limine Requesting Leave to Use Leading Questions*, filed July 9, 2010 [Doc. 168]. The Court held a hearing on July 20, 2010, at which it interviewed the alleged victim, T.L., and at which it heard the conclusions and recommendations of the Court-appointed guardian ad litem. The Court, having considered the motions, briefs, testimony at the hearing, and relevant law, and being otherwise fully informed, finds that Defendant's motion should be GRANTED. It further finds that, because the witness will not be permitted to testify, the Government's two motions should be DENIED as moot.

## BACKGROUND

T.L. is the alleged victim of a sexual assault by his father, Defendant Theodore Largo. At the time of the alleged assault, October 29, 2008, T.L. was four years of age. He is currently six years old. Anticipating that the Government would call T.L. to testify at trial, Defendant filed a

motion [Doc. 55] seeking to preclude him from testifying. Defendant's motion contends that "[b]y reason of [T.L.'s] tender years and level of intellectual and emotional development, he is not competent to testify as a witness at trial particularly as to alleged events that took place over one year ago while asleep." Doc. 55 at 2, ¶ 5. The motion also contends that T.L's testimony would be counterproductive to his psychological well being, would not assist the trier of fact, and would be confusing to the jury because he would likely affirm any leading question posed to him. *Id*. at 2, ¶¶ 6-7.

In order to better evaluate T.L.'s ability to testify, and to ensure that T.L.'s interests, which are potentially different from those of either the prosecution or defense, are adequately protected, the Court appointed a guardian ad litem. *See* Doc. 184. The guardian ad litem conducted a thorough investigation. She interviewed T.L., T.L.'s current foster mother, the victim advocate from the United States Attorney's office, the Assistant United States Attorney, the case agent from the FBI, T.L.'s therapist, Defendant's counsel, and Defendant. *See* Transcript of July 20, 2010 hearing (hereinafter "Tr.") at 71:12-25. The Court then interviewed T.L. in the presence of both counsel, the guardian ad litem, and T.L.'s foster mother. Based on this interview and the report of the guardian ad litem, the Court concludes that T.L. is competent to testify, and that he understands the need to testify truthfully, but that insufficient evidence exists to support a finding that T.L. currently has personal knowledge of the matter about which the Government seeks to have him testify, as required by Fed. R. Evid. 602.

## **DISCUSSION**

Under Fed. R. Evid. 601, every person is presumed competent to be a witness, unless explicitly prohibited by another rule of evidence. Rule 601 eliminated the traditional barriers to witness participation, such as those based on age, that were found in the common law. *See*

Advisory Committee Notes to Rule 601.  The strong presumption in favor of children's competence to testify is made explicit by 18 U.S.C. § 3509, titled "Child victims' and child witnesses' rights."  Section 3509 addresses testimony by children who are alleged to have been the victims of sexual abuse.  Under § 3509(c)(2), a child, regardless of age, is presumed to be competent to testify.  This statute places a heavy burden on a party seeking to have a child declared incompetent to testify.  The Court may conduct a competency examination, but "only upon written motion and offer of proof of incompetency by a party."  18 U.S.C. §  3509(c)(3). Defendant's motion only requested generally that the Court prohibit T.L. from testifying–it did not ask for a competency examination or make an offer of proof of incompetency.  Additionally, 18 U.S.C. § 3509(c)(4) states that "a competency examination regarding a child may be conducted only if the court determines, on the record, that compelling reasons exist.  A child's age alone is not a compelling reason."  The Court made no such determination.  Thus, the Court's interview with T.L. was not performed as part of a competency examination, nor does the Court's decision precluding T.L. from testifying rest on a finding that T.L. is not competent to testify.

Instead, based in part on concerns raised by the guardian ad litem after her initial interviews, the Court interviewed T.L. to ensure that he understood the difference between truth and falsehood, and also that he had personal knowledge of the matter about which the Government sought to have him testify.  Fed. R. Evid. 603 requires every witness to declare that he will testify truthfully, and a court has the ability to confirm that a potential witness understands this duty prior to admitting testimony.  *See United States v. Allen J.*, 127 F.3d 1292, 1295 n.3 (10th Cir. 1997) (approving of a court's questioning to satisfy itself that the witness understood the need to be truthful in her statements, and distinguishing questioning for this purpose from a competency examination under 18 U.S.C. § 3509(c)).  After questioning T.L., the Court is

convinced that T.L. understands the difference between truth and falsehood. Evaluating simple statements, T.L. was clearly able to distinguish between what was true and what was false. *See* Tr. at 59:4-60:24.

However, after hearing the report of the guardian ad litem and conducting its own interview of T.L., the Court finds that insufficient evidence exists to support a finding that T.L. has a recollection of the event about which he would testify. Fed. R. Evid. 602 requires that a potential witness "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Of course, a witness' knowledge need not "be positive or rise to the level of absolute certainty." *United States v. Sinclair*, 109 F.3d 1527, 1537 (10th Cir. 1997). A certain level of inconsistency or gaps in knowledge does not preclude a witness from testifying to a matter; rather it goes to the witness' credibility. *See United States v. Bedonie*, 913 F.2d 782, 799-800 (10th Cir. 1990). Certainly, the bar to admission of testimony under Rule 602 is quite low, such that "testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *Barto v. Armstrong World Indus.*, 923 F. Supp 1442, 1445 (D. N.M. 1996) (quoting *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990)). In evaluating potential testimony, a court should consider whether the witness has demonstrated sufficient "capacity to observe, remember, and recount, such that he can probably bring added knowledge of the facts." *Id.* (quoting Michael H. Graham, *Handbook of Federal Evidence* § 602.2 (3d ed. 1991)). At some point, however, multiple major inconsistencies and the inability to provide any sort of details about an event precludes a finding that the witness has personal knowledge of a matter. That is the case in this instance.

In two interviews on the same day, T.L.'s version of events varied widely, sometimes

even within the same interview. For instance, he told the guardian ad litem that the incident took place in the morning, during the summer. Tr. at 75:5-8. It is undisputed that the alleged incident took place in the evening at the end of October. Later, he told the Court that the incident took place at night, but then he woke up in the morning and was still in his bed while his father was still in the living room watching television. Tr. 61:24-63:13. It is undisputed that his father was arrested the night of the incident, and that T.L. was taken from his bed to be interviewed and examined. T.L. also could not consistently state where the incident occurred, or who was present at the time of the incident. He told the Court that he was in his room with the door closed when it happened. Tr. 67:1-9. He then indicated that he was in the living room when it happened. *Id*. at 67:10-68:4. Then, upon prompting by his foster mother, he again indicated that he was in his room. *Id*. at 68:11-19. He told the guardian ad litem that he was awake at the time of the alleged incident, but told the Court that he was asleep. *Id*. at 75:13-15. At one point in his interview with the Court, when asked whether anyone else was at the house at the time of the incident, T.L. replied "No, only my – – . He was outside. He was drinking beer." *Id*. at 68:20-22. During the same interview, he then indicated that the only people present at the house at the time of the alleged incident were his father and the police. *Id*. at 69:8-11. It is undisputed that T.L.'s sister, his aunt, his aunt's husband, and his aunt's two children were also present.

      T.L. was also unable to give any details about the alleged incident. Although he said his father "hurt [his] bottom," Tr. 66:11, he said he did not remember when he did it or how it happened. *Id*. at 66:14-19. This is consistent with his inability to give any sort of detail to the guardian ad litem, despite her attempts to elicit some sort of explanation. *Id*. at 76:8-20. Although T.L. did mention something about his father's fingers when told that he would be able to quit talking if he said something, he was still unable to give any further detail, and this appears

to be the first instance that fingers have been mentioned in anything before the Court in this matter.

Significantly, Fed. R. Evid. 602 speaks in the present tense, indicating that evidence must be introduced "sufficient to support a finding that the witness *has* personal knowledge of the matter." (emphasis added). Thus, it appears to contemplate a situation in which a potential witness had personal knowledge of an event at one time, but no longer has that knowledge due to passage of time, or the witness' age at which the alleged incident transpired. In ruling that insufficient evidence exists to support a finding that T.L. currently has personal knowledge of the alleged incident, the Court is not indicating that he never had such knowledge. Rather, after a passage of almost two years, with an event that took place when he was so young, he appears to no longer have such knowledge, if he ever did. This is not the type of case in which a witness indicates that his memory is hazy about events or the witness is mistaken about certain small details. Instead, the witness appears to be unable to give any details about the alleged assault and has given several different, completely inconsistent recollections regarding the time, place, and manner of the alleged assault during interviews on the same day. This type of inconsistency is especially significant in a situation such as this, where direct examination would most likely need to be conducted using leading questions, and the ability to effectively cross-examine such a fragile witness is in question. As indicated by the guardian ad litem, T.L.'s testimony appears to change depending on whether he is being coached by others, which she understands may be caused in part by frequent meetings between T.L., his therapist, and his foster mother. Tr. 73:20-25; 75:16-21; 76:4-6. The Court does not lightly exclude the testimony of any witness, and especially not that of an alleged victim. However, in this case, such testimony must be excluded because of an apparent current lack of personal knowledge on the part of the witness.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's *Motion in Limine to Exclude John Doe's Testimony* [Doc.55] is GRANTED, that the United States' *Motion for Two-Way Closed Circuit Television Testimony* [Doc. 103] is DENIED as moot, and that the United States' *Motion in Limine Requesting Leave to Use Leading Questions* [Doc. 168] is DENIED as moot.

_____
**UNITED STATES DISTRICT JUDGE**